**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TYANNA QUALLS, on behalf of Plaintiff and the class members described herein, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| ANONG LLC doing business as AVAILBLUE; LDF HOLDINGS, LLC; JESSI LEE PHILLIPS LORENZO, also known as Jessi Phillips Lorenzo, formerly known as Jessi Lee Phillips; MARK KOETTING; MAINSPRING MANAGEMENT LLC; RICK A. GWYNNE II; and JOHN DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT – CLASS ACTION

1.     Plaintiff, Tyanna Qualls, brings this action against Defendants Anong LLC doing business as AvailBlue; LDF Holdings, LLC;  Jessi Lee Phillips Lorenzo, also known as Jessi Phillips Lorenzo, formerly known as Jessi Lee Phillips; Mark Koetting; Mainspring Management LLC; Rick A. Gwynne II; and John Does 1-10 to secure redress for usurious and illegal loans made to Illinois residents.

2.     Plaintiff damages and injunctive and declaratory relief pursuant to the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq., and Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq.; damages pursuant to the Illinois Interest Act, 815 ILCS 205/6; and treble damages under RICO.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under 18 U.S.C. §1964 (RICO), 28 U.S.C. §1331 (general federal question), and 28 U.S.C. §1367 (supplemental jurisdiction).  Jurisdiction may

also exist under 28 U.S.C. §1332(d), depending on the number and amount of loans and amount of damages.

4.     This Court has jurisdiction over each Defendant under 735 ILCS 5/2-209 because each Defendant was involved in the making of illegal loans to Illinois residents.

5.     Venue in the District is proper because the loan was made to a resident of Chicago.

6.     As set forth below, Defendants operate an interactive website, www.availblue.com, through which they sought to and did make loans to Illinois residents.  The use of an interactive website which permits Illinois residents (but not residents of specified other states) to apply for loans, along with the making and collecting of loans within the state, establishes a purposeful availment of Illinois and is sufficient to establish personal jurisdiction over the defendants responsible for the site. *Toys "R" Us, Inc., v. Step Two*, 318 F.3d 446, 454 (3rd Cir. 2003).

## PARTIES

### Plaintiff

7.     Plaintiff Tyanna Qualls is a natural person who at all times relevant has resided in Chicago, Illinois.

### Defendant LDF Holdings

8.     Defendant LDF Holdings, LLC ("LDF Holdings") is a limited liability company chartered under Wisconsin law.  (Appendix A) Its registered agent and office is Elise Susnik, 3471 County Rd. NN, West Bend, WI 53095.  It claims to be wholly owned, indirectly, by the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "LDF Tribe").  (Material from LDF Holdings website, Appendix B)

9.     The LDF Tribe is a small, isolated, and economically depressed Indian Tribe located in rural Wisconsin.

10.     LDF Holdings, LLC claims to operate from 597 Peace Pipe Road, Lac du Flambeau, WI 54538.

**Defendant Lorenzo**

11.     The president of LDF Holdings, LLC and organizer of the high-interest lending scheme described herein is Jessi Lee Phillips Lorenzo, also known as Jessi Phillips Lorenzo, f/k/a Jessi Lee Phillips ("Lorenzo").

12.     Lorenzo is not a member of the LDF Tribe.

13.     According to her LinkedIn profile (Appendix C), as well as information posted on LDF Holdings' website (Appendix B, p. 4), Lorenzo is the president of LDF Holdings, LLC despite not being a member of the LDF Tribe.

14.     As president, Lorenzo directs and controls the lending activities, policies and practices of LDF Holdings, LLC.

15.     On information and belief, Lorenzo resides in Florida.

16.     On information and belief, Lorenzo previously worked for Triax Management and Dater Portfolio in 2015-2016 as "Director of Sovereign Sales."

17.     Lorenzo has described her former employer's business model of selling tribal sovereign immunity to high-interest lenders as follows: "Our success formula is simple: Identify Great Tribes, Financiers, Servicers and Best in Class Legal Teams and have them work cooperatively to build a very profitable compliant business based upon consumer satisfaction."

18.     As described below, Lorenzo is pursuing the same business model through LDF Holdings, LLC.

**Defendant Anong LLC d/b/a AvailBlue**

19.     Defendant Anong LLC d/b/a AvailBlue is a limited liability company, supposedly organized under tribal law, that conducts online lending at high interest rates, in excess of 500%.  It does business via its website, www.availblue.com

20.     The website www.availblue.com is registered to LDF Holdings, LLC. (Appendix D)

21.     Anong LLC d/b/a AvailBlue uses the address of P.O. Box 12, Lac Du Flambeau, WI 54538.

22.     Anong LLC d/b/a AvailBlue is allegedly a portfolio company of LDF Holdings, LLC and claims to be wholly owned, indirectly,  by the LDF Tribe. (Appendix B, p. 3)

23.     However, the location of the server hosting www.availblue.com is actually in the vicinity of Dallas, Texas.  (Appendix E)

24.     LDF Holdings, LLC states on its website (www.ldf-holdings.com/about) that "LDF Holdings owns and manages the entire online lending business."  (Appendix F)

**Defendants Koetting, Mainspring Management LLC, and Gwynne**

25.     In fact, as described below, the principal economic benefit of the activities of Anong LLC d/b/a AvailBlue is received by non-Native American persons, including Lorenzo, Koetting and Mainspring Management LLC .

26.     Koetting and Mainspring Management LLC hold themselves out as managers of Anong LLC d/b/a AvailBlue. (Appendices G-H)

27.     Koetting and Mainspring Management LLC are the "financiers" of the loans made through Anong LLC d/b/a AvailBlue.  On information and belief, they also obtain credit reports on prospective borrowers and determine what loans are to be made.

28.     Koetting may be found at 10561 Barkley Street, Suite 520, Overland Park, KS 66212 and on information and belief resides in the Kansas City area.

29.     Koetting is not a member of the LDF Tribe.

30.     Mainspring Management LLC is a limited liability company organized under Delaware law with principal offices at 10561 Barkley Street, Suite 520, Overland Park, KS 66212. (Appendix I) On information and belief none of its members is a resident of Illinois.

31.     Koetting previously had a rent-a-tribe arrangement using a website called Clear Loan and another small tribe, the Big Lagoon Rancheria, a federally recognized tribe of Yurok and Tolowa Native Americans, with less than 25 members.

32.     After disputes arose between Koetting and Big Lagoon Rancheria, he created Anong LLC d/b/a AvailBlue and continued making "tribal" loans.

-4-

33. Defendant Rick A. Gwynne II holds himself out to borrowers as the "Director of Recovery & Collections" for AvailBlue.

34. In fact, as shown by his Linked-in profile (Appendix J), he is Director of Recovery & Collections at Mainspring.

35. On information and belief, Gwynne is not a member of the LDF Tribe.

36. On information and belief Gwynne resides in the Kansas City area.

### Defendants' Loans

37. Anong LLC d/b/a AvailBlue makes loans through its website, www.availblue.com, to consumers at interest rates in excess of 600% annually. (Appendix K)

38. Anong LLC d/b/a AvailBlue does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

39. Lorenzo acts as the agent of or service provider to Anong LLC d/b/a AvailBlue, with the knowledge, consent and direct participation of LDF Holdings.

40. Lorenzo also arranged the lending scheme.

41. Koetting and Mainspring Management LLC provide the funds for the loans. On information and belief, they approve the loans and are responsible for their collection.

42. Many of the loans made by Anong LLC d/b/a AvailBlue are made to Illinois residents, including Ms. Qualls.

43. These residents have received funds via ACH transfers into bank accounts located in Illinois. The loans also provide for repayment via ACH transfers.

44. At no time has Anong LLC d/b/a AvailBlue held any type of consumer lending license from the Illinois Department of Financial and Professional Regulation.

45. At no time has Anong LLC d/b/a AvailBlue held a bank or credit union charter.

46. Under Illinois law, Anong LLC d/b/a AvailBlue was therefore not allowed to make loans to Illinois consumers at rates exceeding 9%. 815 ILCS 205/4.

47. Anong LLC d/b/a AvailBlue nevertheless advertises and makes loans to Illinois

residents at rates greatly exceeding 9%.

48.    Anong LLC d/b/a AvailBlue's website states that "Availblue.com does not lend to residents of the following States: Arkansas, Connecticut, New York, Vermont, Virginia, Wisconsin, West Virginia or Pennsylvania."

49.    Illinois is not on the excluded list.

50.    Anong LLC d/b/a AvailBlue thus affirmatively sought out Illinois residents for such loans.

51.    All loans made by Anong LLC d/b/a AvailBlue were made at an annual percentage rate exceeding the 9% which a non-bank lender which does not have a license from the Illinois Department of Financial and Professional Regulation may charge for a loan made to an Illinois resident.

### Defendants John Does 1-10

52.    Defendants John Does 1-10 are other persons and entities that participated in the lending activities described herein.

### FACTS

### Illinois Prohibitions on Predatory Loans

53.    Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%.   815 ILCS 123/15-1-1 et seq.  "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan."  815 ILCS 123/15-5-10.

54.    Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

55.    Previously, higher rates were permitted to licensed lenders, banks and credit unions under the Payday Loan Reform Act, 815 ILCS 122/1-1 et seq., and the Consumer

Installment Loan Act, 205 ILCS 670/1 et seq.

56.     At all relevant times a consumer lender who did not have a license or banking or credit union charter was limited to 9% under the Illinois Interest Act, 815 ILCS 205/4.

57.     Any loans to Illinois consumers at more than 36%, or made by unlicensed persons at more than 9%, are void and unenforceable.

58.     The Predatory Loan Prevention Act provides:

Section 15-5-10. Violation. Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan.

Section 15-5-15. No evasion.

(a) No person or entity may engage in any device, subterfuge, or pretense to evade the requirements of this Act, including, but not limited to, making loans disguised as a personal property sale and leaseback transaction; disguising loan proceeds as a cash rebate for the pretextual installment sale of goods or services; or making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State.

(b) If a loan exceeds the rate permitted by Section 15-5-5, a person or entity is a lender subject to the requirements of this Act notwithstanding the fact that the person or entity purports to act as an agent, service provider, or in another capacity for another entity that is exempt from this Act, if, among other things:

(1) the person or entity holds, acquires, or maintains, directly or indirectly, the predominant economic interest in the loan; or

(2) the person or entity markets, brokers, arranges, or facilitates the loan and holds the right, requirement, or first right of refusal to purchase loans, receivables, or interests in the loans; or

(3) the totality of the circumstances indicate that the person or entity is the lender and the transaction is structured to evade the requirements of this Act.

Circumstances that weigh in favor of a person or entity being a lender include, without limitation, where the person or entity:

(i) indemnifies, insures, or protects an exempt person or entity for any costs or risks related to the loan;

(ii) predominantly designs, controls, or operates the loan program; or

(iii) purports to act as an agent, service provider, or in another capacity for an

exempt entity while acting directly as a lender in other states.

59. In addition:

a. The Consumer Installment Loan Act provides, at 205 ILCS 670/20(d), that if any person who does not have a license issued under this Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."

b. The Payday Loan Reform Act provides, at 815 ILCS 122/4-10(h), that "if a lender who does not have a license issued under this Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."

c. The Consumer Installment Loan Act makes it a felony to engage in the business of making loans covered by the Act without a license. (205 ILCS 670/20(a))

60. Finally, the Illinois criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

61. All of the loans made by Anong LLC d/b/a AvailBlue were, on information and belief, made at more than 36%; indeed, at rates exceeding 450%.

62. Consumers may not waive the protections of these Illinois laws by contract:

a. The Predatory Loan Prevention Act provides (815 ILCS 123/15-10-25): "No waivers. There shall be no waiver of any provision of this Act."

b. The Payday Loan Reform Act provides (815 ILCS 122/4-40) that there shall be no waiver of any provision of this Act.

c. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot*

*Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F.Supp.3d 130, 149-50 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017). A criminal law may not "be bypassed by the mere existence of a choice of law provision contained in a contract." *Electrical & Magneto Serv. Co. v. AMBAC Int'l Corp.*, 941 F.2d 660, 663 (8th Cir. 1991).

63. All such loans are made for personal, family or household purposes. Businesses do not borrow money at over 450% interest.

64. Even the most cursory inquiry into the legality of collecting 450%+ loans made to Illinois residents over the Internet would have disclosed to Defendants that they were violating the law.

65. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state lenders that make loans covered by the Consumer Installment Loan Act or Payday Loan Reform Act via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC,* No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/Dai/CCD/Discipline/HammockCreditCDOrder12CC581.PDF); *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133 (https://www.idfpr.com/dfi/CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20Desist%20Order%20Bob%208%2016%202017.pdf)

**Rent-a-Tribe Schemes**

66.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

67.      In such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

68.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

69.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

**Sovereign Immunity as a Defense to State Usury Laws**

70.     An entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

71.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough,* 629 F.3d at 1183, 1187-88.

-10-

72. An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016) (2016).

73. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

74. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

75. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

76. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

**Origin of the LDF Tribe's Payday Lending Operations**

77. An article published in the LDF Tribe's newsletter, *Inwewin*, in July 2013 noted that the tribe had embarked on a new internet lending business. The article stated that "some view payday loan and internet lending businesses as predatory, with companies taking advantage of

-11-

individuals already in unpleasant financial situations." The article also stated that "the Tribe has partnered with one of the largest and most experienced lending companies." (Appendix L)

78.     Lacking both capital and experience, and in desperate need of money, the tribe attempted to rent out one of its few remaining assets – its sovereign immunity – to non-tribal persons and entities who agreed to pay the LDF Tribe a small percentage of each loan as a fee or commission.

79.     Within a short period of time, the LDF Tribe became one of the most prolific suppliers in the rental market for sovereign immunity, making "rent-a-tribe" agreements with over 50 different non-tribal investors.

80.     The LDF Tribe received between one and three percent of revenues from each of these lenders in exchange for the use of their name.

81.     Loan approval was made by the non-tribal owners of Anong LLC d/b/a AvailBlue. Electronic documents were transmitted to a representative on LDF tribal soil in Wisconsin, who rubber-stamped approval for the loan while technically on the LDF Tribe's reservation. The loans are then funded from bank accounts to which the tribe has no access, and the loans are serviced and collected by nontribal entities off the LDF Tribe's reservation.

82.     Brent McFarland, the LDF Tribe's director of business development, told the Milwaukee Journal Sentinel that "we're looking for ways to leverage (the tribe's) sovereignty" for profit. Cary Spivak, "Lac du Flambeau Cheppewa enter payday loan business with eye to online gambling," Milwaukee Journal Sentinel, Dec. 29, 2013, http://archive.jsonline.com/business/lac-du-flambeau-chippewa-enter-payday-loan-business-with-eye-to-online-gambling-b99164952zl-237906421.html. (Appendix M)

### Loan to Plaintiff

83.     On November 3-4, 2021, "Anong LLC d/b/a AvailBlue" made a loan to Plaintiff Tyanna Qualls at a disclosed annual percentage rate of 664.77%. (Appendix K)

84.     The loan was made for personal purposes.

85.     Appendix K is a form document.

86.     The principal amount was transferred to Plaintiff's bank account in Illinois via ACH.

87.     The loan was made entirely via Internet.

88.     The loan was to be repaid via ACH.

89.     On or about November 19, 2021, an ACH payment was taken from Plaintiff's account.

90.     Plaintiff cancelled the ACH debit authorization.

91.     Plaintiff was required to pay over $30 to cancel the ACH debit.

92.     Plaintiff, by counsel, thereupon notified AvailBlue that she was cancelling any ACH authorization or wage assignment.

93.     Defendant Gwynne, using the email address rick@availblue.com, responded that "We need a POA signed by Tyanna Qualls before we can release or communicate any information."

94.     On information and belief, Gwynne is in charge of collecting the illegal loans.

95.     Anong LLC d/b/a AvailBlue's lending does not actually occur on the Tribe's reservation.

96.     A significant majority of the transaction occurs within the State of Illinois – applying for the loan and receiving and collecting the funds.

97.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

98.     Plaintiff  has never set foot on the Tribe's land in Wisconsin.

99.     Loans to Illinois residents made in the same manner as the loan to Ms. Qualls are governed by the laws of the State of Illinois.

100.    Defendant Lorenzo is responsible for orchestrating the lending scheme pursuant to which Anong LLC d/b/a AvailBlue  lent money to Plaintiff and other Illinois residents.

## COUNT I – ILLINOIS CONSUMER FRAUD ACT AND ILLINOIS PREDATORY LOAN PREVENTION ACT  –  DECLARATORY AND INJUNCTIVE RELIEF

101.    Plaintiff incorporates paragraphs 1-100.

102.    Defendants violated the Predatory Loan Prevention Act by making loans to Illinois residents at over 36% interest.

103.    Violations of the Predatory Loan Prevention Act are violations of the Illinois Consumer Fraud Act.  (815 ILCS 123/15-10-5)

104.    Defendants also engaged in unfair and deceptive practices, in violation of 815 ILCS 505/2, by:

        a.      Making loans in violation of Illinois criminal statutes; and

        b.      Representing that such loans were enforceable.

105.    All loans made by Defendants to Illinois residents are void.

106.    A declaratory judgment so providing is necessary and appropriate.  *Tepper v. Cnty. of Lake*, 233 Ill. App. 3d 80,  598 N.E.2d 361 (2d Dist. 1992)

107.    Injunctive relief against any attempt to collect the debt is necessary and appropriate.  *Davis v. Bank of Am., N.A.*, 20cv4816, 2021 U.S. Dist. LEXIS 13240, 2021 WL 243572 (N.D.Ill., Jan. 25, 2021).

## CLASS ALLEGATIONS

108.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

109.    The class consists of (a) all individuals with Illinois addresses (b) to whom Defendants made loans at more than 36% interest (c) which loans are still outstanding or have been outstanding at any time during the 3 years prior to the filing of this action.

110.    Similar classes have been certified in a number of prior cases.  *Jones v. National*

*Credit Adjusters,* 10cv8027 (N.D.Ill.) (Gilbert, M.J.) (class settlement); *Couser v. National Credit*

*Adjusters*, 1:12-cv-07593-JSR and 1:13-cv-02542-JSR (S.D.N.Y.) (class settlement); *Paxton v. National*

*Credit Adjusters,* 12cv6499 (N.D.Ill.) (Durkin, J., and Holderman, J.) (class settlement); *Jones v.*

*Vohwinkel*, 10cv7954 (N.D.Ill.) (Manning, J.) (class settlement). See also *Madden v. Midland Funding,*

*LLC,* 237 F.Supp.3d 130 (S.D.N.Y. 2017).

111. The class is so numerous that joinder of all members is not practicable. On

information and belief, based on Defendants' use of the Internet to make loans to Illinois residents,

there are at least 40 class members.

112. There are questions of law and fact common to the class members, which

common questions predominate over any questions relating to individual class members. The

predominant common question is whether Defendants make illegal loans.

113. Plaintiff will fairly and adequately represent the class members. Plaintiff

has retained counsel experienced in class actions and consumer credit litigation.

114. Plaintiff's claim is typical of the claims of the class members. All are based on the

same factual and legal theories.

115. A class action is superior for the fair and efficient adjudication of this matter, in

that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights. Indeed, no one

            would pay a void loan except through fraud or duress.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

against Defendants for:

           i.    A declaration that the loans made by Defendants to Plaintiff and the

               class are unenforceable;

          ii.    Attorneys' fees, litigation expenses and costs of suit (815 ILCS

               505/10a); and

-15-

iii.      Such other and further relief as the Court deems proper.

## COUNT II – USURY

116.    Plaintiff incorporates paragraphs 1-100.

117.    Defendants violated the Illinois Interest Act, 815 ILCS 205/4, by making and collecting loans to Illinois residents at over 9% interest.

118.    Defendants are subject to statutory damages of twice the interest contracted for or collected, under 815 ILCS 205/6. Ordinarily the principal amount of the loan is deducted, but here the principal is declared void.

## CLASS ALLEGATIONS

119.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

120.    The class consists of (a) all individuals with Illinois addresses (b) to whom Defendants made loans at more than 9% interest (c) which loans are still outstanding, or were outstanding on a date more than two years prior to the filing of this action.

121.    Similar classes have been certified in a number of prior cases. *Jones v. National Credit Adjusters,* 10cv8027 (N.D.Ill.) (Gilbert, M.J.) (class settlement); *Couser v. National Credit Adjusters*, 1:12-cv-07593-JSR and 1:13-cv-02542-JSR (S.D.N.Y.) (class settlement); *Paxton v. National Credit Adjusters,* 12cv6499 (N.D.Ill.) (Durkin, J., and Holderman, J.) (class settlement); *Jones v. Vohwinkel*, 10cv7954 (N.D.Ill.) (Manning, J.) (class settlement). See also *Madden v. Midland Funding, LLC,* 237 F.Supp.3d 130 (S.D.N.Y. 2017).

122.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on Defendants' use of the Internet to make loans to Illinois residents, there are at least 40 class members.

123.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether Defendants make illegal loans.

124.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

125.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

126.     A class action is superior for the fair and efficient adjudication of this matter, in that:

     a.     Individual actions are not economically feasible.

     b.     Members of the class are likely to be unaware of their rights.  Indeed, no one would pay a void loan except through fraud or duress.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

     i.     Damages of twice the interest contracted for or collected;

     ii.     Attorneys' fees, litigation expenses and costs of suit (815 ILCS 205/6); and

     iii.     Such other and further relief as the Court deems proper.

## COUNT III – RICO

127.     Plaintiff incorporates paragraphs 1-100.

128.     This claim is against Defendants Jessi Lee Phillips Lorenzo, LDF Holdings, LLC, Koetting,  Mainspring Management LLC, and Gwynne.

129.     All loans made in the name of AvailBlue to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

130.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

131.     AvailBlue is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

132.     Defendants Jessi Lee Phillips Lorenzo, LDF Holdings, LLC, Koetting, Mainspring Management, and Gwynne are associated with AvailBlue, as set forth above, in that they direct and control its lending and collection activities.

133.     Defendants conducted or participated in the conduct of the affairs of AvailBlue through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

134.     Plaintiff suffered loss of money as a result.

## CLASS ALLEGATIONS

135.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ.P. 23(a) and (b)(3).

136.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of AvailBlue at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

137.     The class is so numerous that joinder of all members is not practicable.   On information and belief, there are at least 40 class members.

138.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

    a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

    b.     Whether AvailBlue is an "enterprise."

    c.     Whether Defendants are associated with AvailBlue.

    d.     Whether Defendants conducted or participated in the affairs of AvailBlue through a pattern of making and collecting unlawful loans.

139.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

140.     Plaintiff's claim is typical of the claims of the class members.  All are based on the

same factual and legal theories.

141. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Treble damages;

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other or further relief as the Court deems proper.

## COUNT IV – RICO

142. Plaintiff incorporates paragraphs 1-100.

143. This claim is against Jessi Lee Phillips Lorenzo, Koetting, Mainspring Management LLC, and Gwynne.

144. All loans made in the name of AvailBlue to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

145. The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

146. AvailBlue and LDF Holdings, LLC constitute an association in fact enterprise, existing for the purpose of making high-interest loans.

147. The association in fact enterprise affects interstate commerce, in that it has physical locations outside of Illinois and makes loans to Illinois residents via the Internet.

148. Defendants Jessi Lee Phillips Lorenzo, Koetting, Mainspring Management LLC, and Gwynne are associated with the enterprise, in that they direct and control its lending and collection activities.

149. Defendants Jessi Lee Phillips Lorenzo, Koetting, Mainspring Management LLC,

and Gwynne  conducted or participated in the conduct of the affairs of the association in fact
enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18
U.S.C. §1962(c).

150.     Plaintiff suffered loss  of money as a result.

## CLASS ALLEGATIONS

151.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and
(b)(3).

152.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was
made in the name of AvailBlue at more than 9% interest (c) which loan was made on or after a date
4 years prior to the filing of suit.

153.     The class is so numerous that joinder of all members is not practicable.   On
information and belief, there are at least 40 class members.

154.     There are questions of law and fact common to the class members, which
common questions predominate over any questions relating to individual class members.  The
predominant common questions are:

  a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

  b.     Whether LDF Holdings and AvailBlue constitute an association in fact
         "enterprise."

  c.     Whether Defendant is associated with the enterprise.

  d.     Whether Defendant conducted or participated in the affairs of the enterprise
         through a pattern of making and collecting unlawful loans.

155.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained
counsel experienced in class actions and consumer credit litigation.

156.     Plaintiff's claim is typical of the claims of the class members.  All are based on the
same factual and legal theories.

157.     A class action is superior for the fair and efficient adjudication of this matter, in that:

-20-

            a.         Individual actions are not economically feasible.

            b.         Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

            i.         Treble damages;

            ii.         Attorney's fees, litigation expenses and costs of suit; and

            iii.         Such other or further relief as the Court deems proper.

*s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Atty. No. 41106

## LIST OF APPENDICES

A      Wisconsin corporation information for  LDF Holdings, LLC

B      Material from LDF Holdings website

C      LinkedIn profile of Jessi Lee Phillips Lorenzo

D      Website registration for  www.availblue.com

E      Location of server hosting www.availblue.com

F      Material from LDF Holdings, LLC  website

G      Company profile for AvailBlue

H      Online information for Mark Koetting

I      Kansas Secretary of State information for Mainspring Management LLC

J      LinkedIn profile for Rick A. Gwynne II

K      Plaintiff's loan agreement

L      Article published in the LDF Tribe's newsletter, *Inwewin*, in July 2013

M      Cary Spivak, "Lac du Flambeau Cheppewa enter payday loan business with eye to online gambling," Milwaukee Journal Sentinel, Dec. 29, 2013, http://archive.jsonline.com/business/lac-du-flambeau-chippewa-enter-payday-loan-business-with-eye-to-online-gambling-b99164952zl-237906421.html.

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN COMBS LATTURNER
& GOODWIN, LLC**
20 S. Clark St., Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 739-0379 (FAX)

-23-

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman